JOSEPH C. CHURCH, Overseer of the Poor, *vs.* TOWN OF SOUTH KINGSTOWN.

WASHINGTON—FEBRUARY 2, 1901.

PRESENT: Stiness, C. J., Tillinghast, Wilbur, Rogers, Douglas, Dubois, and Blodgett, JJ.

(1)  *Paupers.    Constitutional Law.*

Gen. Laws R. I. cap. 79, §§ 18–23, providing for the appointment of a com-mission to determine whether a town is negligent in caring for its pau-pers is unconstitutional, being in violation of the fourteenth amend-ment to the constitution of the United States, which directs that no State shall "deprive any person of life, liberty, or property without due process of law."

What is meant by the words "due process of law."

(2)  *Constitutional Law.    Distribution of Powers.*

*Semble*, that for the legislative branch of the government to direct the judicial to confirm the report of any commission or tribunal in any con-tested matter without an examination and determination by the latter whether the findings of the commission are right or wrong, or whether its proceedings are legal or illegal, is an unwarranted exercise of legisla-tive authority.

*Quære*, whether the statute does not also violate the right of trial by jury.

COMPLAINT under Gen. Laws R. I. cap. 79, § 18.    Certified to the Appellate Division upon the constitutionality of ·act. The facts are fully stated in the opinion.

TILLINGHAST, J.    This is a proceeding under §§ 18, 19, and

20 of Gen. Laws R. I. cap. 79, and is now before the court on certain constitutional questions raised by the defendant. Said sections are as follows :

"SEC. 18.   Whenever any pauper shall not be suitably cared for by the town to which he is chargeable, any person, upon first issuing five days' notice to any of the commissioners or overseers of the poor of the town of the situation of such pauper, and on continued neglect of the town, may complain in writing to the Appellate Division of the Supreme Court or to any justice thereof, or in vacation to any justice of the Supreme Court, as provided in section seventeen of chapter two hundred twenty-one, and setting forth as nearly as may be the nature of the grievance complained of.

"SEC. 19.   Said Appellate Division or such justice, as the case may be, shall, after ordering notice to the town of the pendency of such complaint, in it or his discretion, appoint a commission of not exceeding three persons, who shall visit the pauper or paupers concerning whom the complaint is made, and, upon hearing the allegations and evidence of the parties, report to said court or justice, as soon as may be, whether or not said complaint is well founded.

"SEC. 20.   Whenever it shall be made to appear to said court or justice, by the report of the commissioners, that said pauper is not suitably provided and cared for, said court or justice shall pass an order requiring the appropriate town authorities forthwith to provide suitable accommodations and care for such pauper, either in the poor-house or in some private family, in the discretion of said court or justice, at the expense of the town, and to pay all expenses of the proceeding."

The travel of the case is as follows :

(1)   A complaint was made by the plaintiff, under said section 18, to the effect that J. E. R. Crandall, of South Kingstown, was being improperly treated by the overseer of the poor of said town, in that he was not properly clothed and fed ; and that he had been driven from the town-farm in said town and left in a destitute condition, he being at the time physically incapacitated for work.   The complaint shows that the

overseer of the poor of said town was notified of Crandall's condition, and that he refused to furnish him any assistance.

Citation was thereupon issued by a justice of this court, and, upon hearing, a commission was appointed as provided in section 19. This commission, which was composed of three persons, namely, Nathan B. Lewis, Rowland R. Robinson, and John W. Saunders, subsequently made report to the court that they had visited said Crandall; that they held meetings at the town-house in Charlestown, and also at the town-house in South Kingstown, to hear the allegations and evidence adduced by the complainant and respondent and to examine into the financial and physical condition of said Crandall; that at said hearings both parties were represented by counsel, and divers witnesses were sworn and testified as to his condition and his ability to support himself by manual labor; that the evidence showed that in 1898, while suffering from a dislocated shoulder, and being without money, he applied to the overseer of the poor of South Kingstown for permission to go to the town-asylum temporarily until his shoulder should be well; that he remained at said asylum thereafter until the 18th day of June, 1900, at which time he was removed therefrom by the overseer of the poor of South Kingstown and left to look out for himself; that the reasons given by the overseer for his removal were, first, that he considered said Crandall able to take care of himself and earn his own living; second, that said Crandall refused to observe the rules adopted for the government of the asylum, going away to the neighboring villages and other places without permission, declaring that he would go and come when he pleased; and third, that he made the other inmates of the asylum uneasy and discontented by advising them that they need not work and by refusing to work himself when requested so to do.

The report sets forth that these reasons were strongly supported by the evidence of the keeper of the asylum, by a former keeper and a former overseer of the poor, and were not materially denied by Crandall himself.

The report further sets forth that, in regard to the physical condition of said Crandall, the evidence was inharmonious

and conflicting.   Then the finding of the commission was as follows :

" 1. That said Crandall has a legal settlement in the town of South Kingstown.

" 2. That he is without property or other means of support than his own labor, and may be fairly classed as a 'poor and indigent person.'

" 3. That his removal from said South Kingstown asylum was partially justified by his own misconduct while an inmate thereof, although it may be well questioned whether it is not a case for proper discipline rather than removal.

" 4. That the overseer of the poor of South Kingstown, having neglected and refused for more than five days to provide for said Crandall after having received notice as aforesaid from the overseer of the poor of the town of Charlestown, the commissioners consider that there was neglect on the part of the town of South Kingstown to suitably care for said Crandall, and that said complaint is well founded."

Appended to this report is a list of the fees and costs incurred by the plaintiff in connection with the trial, amounting to the sum of $3.60, and also commissioners' fees of $30 each, making $90 in all for their services and expenses.

Upon the filing of the report the plaintiff moved that an order be entered requiring the defendant town to forthwith provide suitable accommodations and care for said Crandall, as provided in section 20 of said statute ; and the defendant moved to quash and dismiss the entire proceeding because the statute under which it was brought is unconstitutional in this :

(1) That it is in violation of the constitutional right of trial by jury; (2) because it deprives the defendant of its property without due process of law; (3) because, under said statute, the commission appointed in said case exercised judicial functions, was sole judge of both law and fact, their conclusion being final, and that this is in contravention of article 10, section 1, of the constitution.

Said motions were duly certified to this division, and are now before us for decision.

Whether the statute in question is in violation of the right of trial by jury we do not deem it necessary to decide, although it is pertinent to remark that various questions relating to the settlement of paupers and the liability of towns for their support have been the subject of trial by jury in this State from time immemorial. But as we are of the opinion that the statute is clearly unconstitutional because it deprives the defendant of its property without due process of law, there is no occasion for us to consider any of the other constitutional questions presented by the record.

"Due process of law," or "the law of the land," which terms are practically synonymous, means law in its regular course of administration through courts of justice. As recently said by this court in *Carr v. Brown*, 20 R. I. 218, "It means a course of legal proceedings according to those rules and principles which have been established in our systems of jurisprudence for the protection and enforcement of private rights." See also *Burke v. Savings Bank*, 12 R. I. 513; *Reynolds v. Randall*, 12 R. I. 525-6; *Greene v. Briggs*, 1 Curtis, 311; *Wynehamer v. People*, 2 Parker's Crim. Rep. 421. Under those rules there must be a court of competent jurisdiction to pass upon the subject-matter of the suit or proceeding, *Pennoyer v. Neff*, 95 U. S. 714, and, except in matters of taxation, there must be a judicial trial in which those rights shall be adjudicated. *State v. Beswick*, 13 R. I. 218. Applying those rules to the proceeding provided for by this statute, we find at once that it does not meet the requirements thereof. In the first place the commission created by section 19, although it exercises some of the functions of a court, is not a court, for several reasons, viz.: (1) Its members are not required to take an oath; (2) it does not appear to be authorized to administer oaths to the witnesses who shall appear before it (see Gen. Laws R. I. cap. 25, §§ 9, 10, 11; *In re* Investigating Commission, 16 R. I. 752); and (3) it is not authorized to render any judgment in the proceedings brought before it. Instead of rendering any judgment in a given case, the duty of the commission is to report to the court or justice which appointed it whether or not the com-

plaint is well founded ; and when this is done, the power of the commission is exhausted.    We think it is clear that a commission with such limited authority cannot be said to be a judicial tribunal.    Indeed, it lacks every essential prerequisite of such a body.    This being so as to said commission taken by itself, we are next to inquire whether, when taken in connection with a court or justice to which it makes its report, and of the action which the court or justice is required to take thereon, it can be said to constitute a judicial tribunal. We do not think it can.    For, even assuming that the court or justice should receive the report and pass the order provided for in section 20, the entire proceeding would not then include any judicial trial or finding.    For it is apparent from the language used in said section that said court or justice is not called upon or even *authorized* to exercise any judicial function whatever in the premises, but simply to read the report, and *if it appears therefrom* that the pauper in question is not suitably provided for, to make the order referred to.    In other words, the court renders no judgment in the case, but merely performs the ministerial function of reading the report and ascertaining therefrom whether the *commissioners* find that the complaint is well-founded or not.    If they report that it is, the court, without any further proceeding and without the right to exercise any judicial discretion in the matter, is bound to make the order called for by said section 20.    All questions of law and fact which may arise during the hearing before the commission must be decided by it without any power of review in any other tribunal, and this notwithstanding it lacks all of the essential characteristics of a court.    See, in this connection, *Attorney-General* v. *McDonald*, 3 Wis. 703 ; *In re Kindling*, 39 Wis. 58–9.    To call such a proceeding " due process of law " would be to violate all the fundamental principles upon which our judicial system is based.    If the statute had given to the defendant the right of exception to the rulings and findings of the commission and had conferred upon the court or justice to which the report was made the power to review such rulings and findings, substantially as provided by the statute now in force

relating to the rulings of District Courts, Gen. Laws R. I. cap. 250, § 12, we will not say that it might not have been enforceable; for then the proceeding would have been under the control of a legally constituted tribunal, and the order provided for by section 20 would not be made until the constitutional rights of the defendant to a judicial trial had been in some way secured to it.    But no such right is given; and the result is that the finding of the commission, both as to law and fact, is final.    The commission reports, and the court (2) "shall pass an order."    In this connection we deem it pertinent to say that for the General Assembly to direct this court or any justice thereof to confirm the report of any commission or tribunal in any contested matter without first examining it and determining whether its findings are right or wrong, or whether the proceedings taken by the commission or tribunal in connection therewith are legal or illegal, is, as it seems to us, an unwarranted exercise of legislative authority. One of the very first principles underlying all judicial proceedings is that the court in rendering its judgment or making its order is to do so upon the law and evidence presented, and that it is not bound to adopt the conclusions of any commission or inferior tribunal made in the case unless, upon examination, it shall find that such conclusions are in accordance with the law and the evidence.

It is to be observed in the case at bar that at least three vital questions must be adjudicated by the commission, in support of the complaint made, before it can find against the defendant.    These questions are :  (1) is the person, concerning whom the complaint is made, a pauper?  (2) has he a legal settlement in the town sought to be charged? and (3) has the defendant town failed in the discharge of its duty to suitably care for him?    The decision of these questions may involve questions of law as well as of fact, and are clearly such as call for a trial before some tribunal possessing ordinary judicial attributes.

The decision or order is also far-reaching in its effect; for under section 23 of the statute it is provided that :  "Every town neglecting or refusing for the space of ten days to

comply with any order made as aforesaid, shall be fined not less than fifty dollars nor more than three hundred dollars." It thus appears that the failure of the defendant town to comply with the order made upon such a proceeding renders it liable to indictment and to be fined in the sum of $300, thereby branding it as a criminal and taking its property, notwithstanding it never has been legally adjudged to have committed any offence. See, in this connection, *State* v. *Hoit*, 23 N. H. 355. Moreover, in a proceeding under said section 23, it may well be doubted whether the order made upon the report of the commission would not be *res judicata*, and hence prevent the town from interposing any defence to an indictment found against it under said section 23.

We have examined the statutes of most of the other States, relating to paupers, hoping that we might get some assistance in the determination of the questions presented from the decisions of other courts upon similar statutes, but we have been unable to find any statute like ours. It first appeared in the revision of 1857, and has remained substantially the same as there found in the subsequent revisions. And, so far as we are aware, the case before us is the first and only one which has ever been brought thereunder.

We do not intend by what we have said to reflect in any way whatever upon the manner in which the commission tried and decided the questions before them. It was composed of men who were well fitted for the duties devolved upon them under the statute, and we have no doubt that those duties were intelligently and faithfully discharged. But as they did not constitute a judicial tribunal their finding was of no avail; and as the finding was practically final, to enforce it would clearly be to deprive the defendant of its property without due process of law. We therefore decide that said statute is unconstitutional and void, and that the proceeding in question be, and the same is, hereby quashed.

*Thomas H. Peabody*, for petitioner.

*F. C. Olney*, for defendant town.